**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leon GARCIA, aka Cody Garcia,**
**Defendant–Appellant.**

No. 97–10377.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 1998.

Decided Aug. 25, 1998.

Arthur J. Hutton, Tucson, AZ, for defendant-appellant.

Terry L. Chandler, Assistant United States Attorney, Tucson, AZ, for plaintiff-appellee.

Before: REINHARDT, NOONAN, and THOMPSON, Circuit Judges.

REINHARDT, Circuit Judge:

In this case, we consider whether testimony regarding the existence of an implicit, general agreement among gang members to support one another in fights against rival gangs can constitute sufficient evidence to support a conviction of conspiracy to commit assault when the conduct of the alleged conspirators is otherwise insufficient.

One evening, a confrontation broke out between rival gangs at a party on the Pasqua Yaqui Indian reservation. The resultant gunfire injured four young people, including appellant Cody Garcia. Two young men involved in the shooting, Garcia and Noah Humo, were charged with conspiracy to assault three named individuals with dangerous weapons. A jury acquitted Humo but convicted Garcia. Because there is no direct evidence of an agreement to commit the

criminal act which was the alleged object of the conspiracy, and because the circumstances of the shootings do not support the existence of an agreement, implicit or explicit, the government relied heavily on the gang affiliation of the participants to show the existence of such an agreement. We hold that gang membership itself cannot establish guilt of a crime, and a general agreement, implicit or explicit, to support one another in gang fights does not provide substantial proof of the specific agreement required for a conviction of conspiracy to commit assault. The defendant's conviction therefore rests on insufficient evidence, and we reverse.

## Background

The party at which the shootings occurred was held in territory controlled by the Crips gang. The participants were apparently mainly young Native Americans. While many of the attendees were associated with the Crips, some members of the Bloods gang were also present. Appellant Cody Garcia arrived at the party in a truck driven by his uncle, waving a red bandanna [1] out the truck window and calling out his gang affiliation: "ESPB Blood!" Upon arrival, Garcia began "talking smack" to (insulting) several Crips members. Prosecution witnesses testified that Garcia's actions suggested that he was looking for trouble and issuing a challenge to fight to the Crips at the party.

Meanwhile, Garcia's fellow Bloods member Julio Baltazar was also "talking smack" to Crips members, and Blood Noah Humo bumped shoulders with one Crips member and called another by a derogatory Spanish term. Neither Baltazar nor Humo had arrived with Garcia, nor is there any indication that they had met before the party to discuss plans or that they were seen talking together during the party.

At some point, shooting broke out. Witnesses saw both Bloods and Crips, including Garcia and Humo, shooting at one another. Baltazar was seen waving a knife or trying to stab a Crip. The testimony at trial does not shed light on what took place immediately prior to the shooting, other than the fact that

---

1. The Bloods claim the color red and the Crips      the color blue.

one witness heard Garcia ask, "Who has the gun?" There is some indication that members of the two gangs may have "squared off" before the shooting began. No testimony establishes whether the shooting followed a provocation or verbal or physical confrontation.

Four individuals were injured by the gunfire: the defendant, Stacy Romero, Gabriel Valenzuela, and Gilbert Baumea. Stacy Romero who at the time was twelve years old was the cousin both of Garcia's co-defendant Humo and his fellow Blood, Baltazar. No evidence presented at trial established that any of the injured persons was shot by Garcia, and he was charged only with conspiracy. The government charged both Garcia and Humo with conspiracy to assault Romero, Valenzuela, and Baumea with dangerous weapons under 18 U.S.C. §§ 371, 113(a)(3) and 1153; Humo alone was charged with two counts of assault resulting in serious bodily injury under 18 U.S.C. §§ 113(a)(6) and 1153.

After a jury trial, Humo was acquitted on all counts. Garcia was convicted of conspiracy to assault with a dangerous weapon and sentenced to 60 months in prison. He appeals on the ground that there was insufficient evidence to support his conviction.

**Sufficiency of the Evidence**

■ In order to prove a conspiracy, the government must present sufficient evidence to demonstrate both an overt act and an agreement to engage in the specific criminal activity charged in the indictment. See United States v. Ramos–Rascon, 8 F.3d 704, 709 (9th Cir.1993); United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.1989). While an implicit agreement may be inferred from circumstantial evidence, proof that an individual engaged in illegal acts with others is not sufficient to demonstrate the existence of a conspiracy. See United States v. Lennick, 18 F.3d 814, 818 (9th Cir.1994). Both the existence of and the individual's connection to the conspiracy must be proven beyond a reasonable doubt. United States v. Klimavicius–Viloria, 144 F.3d 1249, 1266 (citing United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1997)).[2]

The government claims that it can establish the agreement to assault in two ways: first, that the concerted provocative and violent acts by Garcia, Humo and Baltazar are sufficient to show the existence of a prior agreement; and second, that by agreeing to become a member of the gang, Garcia implicitly agreed to support his fellow gang members in violent confrontations.

■ However, no inference of the existence of any agreement could reasonably be drawn from the actions of Garcia and other Bloods members on the night of the shooting. An inference of an agreement is permissible only when the nature of the acts would logically require coordination and planning. See, e.g., United States v. Iriarte–Ortega, 113 F.3d 1022, 1024 (9th Cir.1997), amended by 127 F.3d 1200 (9th Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 1209, 140 L.Ed.2d 330 (1998). The government presented no witnesses who could explain the series of events immediately preceding the shooting, so there is nothing to suggest that the violence began in accordance with some prearrangement. The facts establish only that perceived insults escalated tensions between members of rival gangs and that an ongoing gang-related dispute erupted into shooting. Testimony presented at trial suggest more chaos than concert. Such evidence does not establish that parties to a conspiracy "work[ed] together understandingly, with a single design for the accomplishment of a common purpose." United States v. Melchor–Lopez, 627 F.2d 886, 890 (9th Cir.1980) (quoting United States v. Monroe, 552 F.2d 860, 862–63 (9th Cir.1977)).

■ Given that this circumstantial evidence fails to suggest the existence of an agreement, we are left only with gang membership as proof that Garcia conspired with fellow Bloods to shoot the three named individuals. The government points to expert testimony at the trial by a local gang unit detective, who stated that generally gang members have a "basic agreement" to back one another up in fights, an agreement which

2. Even though a defendant's connection to the conspiracy may be slight, the connection must

nonetheless be proven beyond a reasonable doubt. Klimavicius–Viloria, 144 F.3d at 1266.

requires no advance planning or coordination. This testimony, which at most establishes one of the characteristics of gangs but not a specific objective of a particular gang—let alone a specific agreement on the part of its members to accomplish an illegal objective—is insufficient to provide proof of a conspiracy to commit assault or other illegal acts.

Recent authority in this circuit establishes that "[m]embership in a gang cannot serve as proof of intent, or of the facilitation, advice, aid, promotion, encouragement or instigation needed to establish aiding and abetting." *Mitchell v. Prunty*, 107 F.3d 1337, 1342 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 295, 139 L.Ed.2d 227 (1997), *overruled in part on other grounds, Santamaria v. Horsley*, 133 F.3d 1242 (9th Cir.1998) (en banc). In overturning the state conviction of a gang member that rested on the theory that the defendant aided and abetted a murder by "fanning the fires of gang warfare," the *Mitchell* opinion expressed concern that allowing a conviction on this basis would "smack[ ] of guilt by association." *Id.* at 1342. The same concern is implicated when a conspiracy conviction is based on evidence that an individual is affiliated with a gang which has a general rivalry with other gangs, and that this rivalry sometimes escalates into violent confrontations.

The *Mitchell* court reasoned that the conviction in that case necessarily rested on the faulty assumption that gang members typically act in a concerted fashion. *Id.* at 1342. Such an assumption would be particularly inappropriate here. Acts of provocation such as "talking smack" or bumping into rival gang members certainly does not prove a high level of planning or coordination. Rather, it may be fairly typical behavior in a situation in which individuals who belong to rival gangs attend the same events. At most, it indicates that members of a particular gang may be looking for trouble, or ready to fight. It does not demonstrate a coordinated effort with a specific illegal objective in mind. *See Melchor–Lopez*, 627 F.2d at 891 (conspiracy requires proof of both "an intention and agreement to accomplish a specific illegal objective"). The fact that gang members attend a function armed with weapons may prove that they are prepared for violence, but without other evidence it does not establish that they have made plans to initiate it. And the fact that more than one member of the Bloods was shooting at rival gang members also does not prove a prearrangement—the Crips, too, were able to pull out their guns almost immediately, suggesting that readiness for a gunfight requires no prior agreement. Such readiness may be a sad commentary on the state of mind of many of the nation's youth, but it is not indicative of a criminal conspiracy.

■ Finally, as the *Mitchell* panel warned, allowing gang membership to serve as evidence of aiding and abetting "would invite absurd results. Any gang member could be held liable for any other gang member's act at any time so long as the act was predicated on 'the common purpose of "fighting the enemy." ' " *Mitchell*, 107 F.3d at 1341 (citation omitted). Similarly, allowing a general agreement among gang members to back each other up to serve as sufficient evidence of a conspiracy would mean that any time more than one gang member was involved in a fight it would constitute an act in furtherance of the conspiracy and all gang members could be held criminally responsible—whether they participated in or had knowledge of the particular criminal act, and whether or not they were present when the act occurred. Indeed, were we to accept "fighting the enemy" as an illegal objective, all gang members would probably be subject to felony prosecutions sooner rather than later, even though they had never personally committed an improper act. This is contrary to fundamental principles of our justice system. "[T]here can be no conviction for guilt by association . . . ." *Melchor–Lopez*, 627 F.2d at 891.

■ Because of these concerns, evidence of gang membership cannot itself prove that an individual has entered a criminal agreement to attack members of rival gangs. Moreover, here the conspiracy allegation was even more specific: the state charged Garcia with conspiracy to assault three specific individuals—Romero, Baumea and Valenzuela—with deadly weapons. Even if the testimony presented by the state had sufficed to establish a general conspiracy to assault Crips, it

certainly did not even hint at a conspiracy to assault the three individuals listed in the indictment. Of course, a more general indictment would not have solved the state's problems in this case. In some cases, when evidence establishes that a particular gang has a specific illegal objective such as selling drugs, evidence of gang membership may help to link gang members to that objective.[3] However, a general practice of supporting one another in fights, which is one of the ordinary characteristics of gangs, does not constitute the type of illegal objective that can form the predicate for a conspiracy charge.[4]

## Conclusion

Because the government introduced no evidence from which a jury could reasonably have found the existence of an agreement to engage in any unlawful conduct, the evidence of conspiracy was insufficient as a matter of law. A contrary result would allow courts to assume an ongoing conspiracy, universal among gangs and gang members, to commit any number of violent acts, rendering gang members automatically guilty of conspiracy for any improper conduct by any member. We therefore reverse Garcia's conviction and remand to the district court to order his immediate release.[5]

REVERSED AND REMANDED.

MANDATE SHALL ISSUE FORTHWITH.

3. *See, e.g., United States v. Sloan*, 65 F.3d 149, 151 (10th Cir.1995) (gang membership relevant when evidence established that gang controlled drug distribution in particular housing projects); *United States v. Robinson*, 978 F.2d 1554, 1561 (10th Cir.1992) (upholding admission of evidence of gang membership as proof of knowledge and intent when "uncontroverted testimony" that selling cocaine was main purpose of gang); *United States v. Hartsfield*, 976 F.2d 1349, 1352 (10th Cir.1992) (testimony established that primary purpose of gang was to distribute cocaine).

4. Because we conclude that the evidence is insufficient to support Garcia's conspiracy conviction, we need not consider whether the expert's statements regarding the nature of gangs and the

meaning of gang affiliation were admissible. We point out, however, that his general observations failed to identify a specific illegal objective, were not based on specific knowledge of Garcia's gang, and were not addressed specifically to the conduct of that gang, and therefore had little probative value with respect to the specific conspiracy alleged here.

5. As a result of this decision, Garcia is not subject to retrial. *See United States v. Graves*, 143 F.3d 1185, 1191 n. 7 (9th Cir.1998). He has already served over a year in prison.

