**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rodney Phillip TIDWELL,**
**Defendant–Appellant.**

No. 98–10164.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1999

Filed Aug. 20, 1999

Jess A. Lorona, Burch & Cracchiolo, Phoenix, Arizona, for the defendant-appellant.

Paul Charlton and Diane Humetewa, Assistant United States Attorneys, Phoenix, Arizona, for the plaintiff-appellee.

Before: HERBERT Y.C. CHOY, PAUL R. MICHEL,[1] and SIDNEY R. THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Rodney Tidwell appeals his jury conviction and sentence, primarily contending that the Native American Graves Protection and Repatriation Act ("NAGPRA") is unconstitutionally vague. We affirm the conviction and the sentence imposed by the district court.

I

Defendant-appellant Rodney Tidwell and Ernest Chapella were indicted on twelve counts of illegal trafficking in Native American cultural items, eleven counts of theft of tribal property, one count of

---

1. The Honorable Paul R. Michel, United States Circuit Judge for the Federal Circuit, sitting by designation.

trafficking in unlawfully removed archaeological resources, one count of interstate transportation of stolen property, and conspiracy to commit illegal trafficking of Native American cultural items and theft of tribal property. Soon thereafter, Chapella committed suicide.

The government's indictment arose out of an undercover investigation of Tidwell after it received a tip from a confidential informer that Tidwell was trafficking in stolen or protected Native American cultural items. Agent John Fryar, an investigator with the Bureau of Indian Affairs, conducted the investigation and presented himself to Tidwell as a purchaser of Native American art. In a series of meetings with Tidwell, Fryar purchased and attempted to purchase a number of items that the government later learned were religious, cultural, or historical items belonging to two different Native American groups. These items included eleven Hopi masks, also called Kwaatsi or Kachina, and a set of priest robes from the Pueblo of Acoma.

During his final meeting with Tidwell, Fryar discussed the purchase of three other masks. While Tidwell and Fryar discussed this purchase, federal agents executed a search warrant on Tidwell at his home. In addition to the three masks that Fryar was in the process of purchasing, the agents found two more masks at Tidwell's house.

At trial, the government introduced the taped conversations between Agent Fryar and Tidwell. The government also introduced a number of experts on Native American religion and culture who testified that the masks and the robes were prohibited from being sold under the NAGPRA. In his defense, Tidwell introduced testimony of Native Americans who testified that the masks were not authentic Hopi masks and also that the masks Tidwell purchased and sold were not the type of cultural item protected by the NAGPRA.

After the trial, the jury convicted Tidwell of conspiracy under 18 U.S.C. § 371,

seven counts of illegal trafficking in Native American cultural items under 18 U.S.C. § 1170, eleven counts of theft of tribal property under 18 U.S.C. § 1163, and one count of trafficking in unlawfully removed archaeological resources under 16 U.S.C. § 470ee. The masks and the robes formed the basis of the convictions under the NAGPRA, the masks alone formed the basis for the convictions for theft of tribal property and the conspiracy conviction, and the robes alone formed the basis for the conviction for trafficking in unlawfully removed archaeological resources.

The district court then added a two-level adjustment to Tidwell's base offense level for obstruction of justice and a six-level increase based on the amount of the loss and sentenced Tidwell to thirty-three months in prison.

Previous to these convictions, Tidwell had been arrested and convicted under the NAGPRA.

II

■ We review Tidwell's challenge that the NAGPRA is unconstitutionally vague *de novo, see United States v. Lee*, 183 F.3d 1029, 1031–32 (9th Cir.1999), and hold that the NAGPRA is not unconstitutionally vague as applied to Tidwell. In evaluating vagueness, we consider whether the challenged law: (1) sufficiently defines the offense so that ordinary people can understand the prohibited conduct; and (2) establishes standards to ensure that law enforcement officers enforce the law in a nonarbitrary and nondiscriminatory manner. *See id.; Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir.1997). However, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

■ The section of the NAGPRA under which Tidwell was convicted states:

Whoever knowingly sells, purchases, uses for profit, or transports for sale or profit any Native American cultural items obtained in violation of the Native American Grave Protection and Repatriation Act shall be fined in accordance with this title, imprisoned not more than one year, or both, and in the case of a second or subsequent violation, be fined in accordance with this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 1170(b). Cultural items are defined in the NAGPRA and include, *inter alia*, "cultural patrimony." 25 U.S.C. § 3001(3)(D). Cultural patrimony is:

[A]n object having ongoing historical, traditional, or cultural importance central to the Native American group or culture itself, rather than property owned by an individual Native American, and which, therefore, cannot be alienated, appropriated, or conveyed by any individual regardless of whether or not the individual is a member of the Indian tribe or Native Hawaiian organization and such object shall have been considered inalienable by such Native American group at the time the object was separated from such group.

*Id.* Tidwell specifically challenges as vague the two elements of cultural patrimony: the "inalienability" of an item, and an item's "ongoing historical, traditional, or cultural importance" to a Native American group. He argues that because these terms are defined by Native Americans and because tribal law regarding cultural patrimony is not written, it was impossible for him to have fair notice of his wrongful conduct as proscribed by the NAGPRA. Further, Tidwell points to the testimony introduced at his own trial to demonstrate the uncertainty in the law: The government introduced expert witnesses who stated that the masks and the robes were cultural patrimony; he introduced expert witnesses who testified that the masks were not authentic.

In holding that the NAGPRA is constitutional, we adopt the reasoning of the Tenth Circuit in *United States v. Corrow*, 119 F.3d 796 (10th Cir.1997), *cert. de-*

*nied,* —— U.S. ——, 118 S.Ct. 1089, 140 L.Ed.2d 146 (1998). Like Corrow, Tidwell is and claims to be a dealer in Native American art. Therefore, he had the background knowledge sufficient to put him on notice that some of the items he traded might be inalienable objects belonging to a Native American group. Even if he was not sure about whether a particular item was protected, he had sufficient understanding of Native American art and the NAGPRA to know that he would have to inquire further or consult an expert when he purchased the items. As we repeated in *United States v. Bohonus*, "one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." 628 F.2d 1167, 1174 (9th Cir.1980) (citations and internal quotation marks omitted). Similar to the facts presented in *Corrow*, "this is not a case in which an unsuspecting tourist ... innocently purchase[d]" an item protected by the NAGPRA. *Id.* at 803. Tidwell already had been convicted under the NAGPRA and was aware of its statutory prohibition.

We also note that the NAGPRA requires the government to establish that the defendant "knowingly" traded in cultural items in violation of the NAGPRA. This scienter element protects the unwary from criminal punishment. *See Village of Hoffman*, 455 U.S. at 499, 102 S.Ct. 1186; *United States v. Cooper*, 173 F.3d 1192, 1202 (9th Cir.1999); *United States v. Lee*, 937 F.2d 1388, 1394–95 (9th Cir.1991).

Finally, as determined by the *Corrow* court, the NAGPRA does not foster arbitrary enforcement because law enforcement officials must consult with Native American officials to identify items that are cultural patrimony before they can investigate and arrest a suspect. *See* 119 F.3d at 804. For these reasons, we hold that the Act is not unconstitutionally vague as applied to Tidwell.

III

■ Tidwell's argument that he was improperly precluded from presenting evi-

dence in his defense fails. Tidwell sought to introduce evidence that he had constructed one or more of the masks identified by the government's experts as authentic Hopi masks. Tidwell's strategy was that, because the NAGPRA only protects items with historical, traditional, or cultural significance to Native Americans, he might avoid criminal liability by persuading the jury that he had constructed the masks himself. However, the asthenic evidence Tidwell sought to introduce would not have proven that Tidwell had made the masks that he was charged with selling at trial. Rather, the tendered witnesses only could testify generally that Tidwell had some of the materials with which to make masks and that some unidentified masks appeared to be under construction in Tidwell's house. Thus, any error the district court committed in excluding the evidence was harmless beyond a reasonable doubt. *See United States v. Vargas*, 933 F.2d 701, 705–06 (9th Cir.1991).

## IV

Tidwell argues that the government did not provide sufficient evidence from which a rational jury could have convicted him under the charged statutes. We review the evidence presented at trial in a light most favorable to the prosecution to determine if the evidence was sufficient from which a rational jury could have found the essential elements of the charged crime beyond a reasonable doubt. *See United States v. Castro*, 972 F.2d 1107, 1110 (9th Cir.1992).

There was sufficient evidence from which a jury could have convicted Tidwell of engaging in a conspiracy with Chapella. To satisfy a conspiracy charge, the government must present sufficient evidence to demonstrate: (1) an overt act, and (2) an agreement to engage in criminal activity. *See United States v. Garcia*, 151 F.3d 1243, 1245 (9th Cir.1998). An implicit agreement may be inferred from circumstantial evidence if "the nature of the acts would logically require coordination and planning." *Id.* Here, Agent Fryar testified that: (1) Tidwell told him he had

received the masks from an Ernest Chapella up on the Hopi Reservation, and (2) Chapella identified the masks sold by Tidwell to Fryar. In addition, Witness Clifton Ami connected Chapella to improperly acquired Hopi masks.

The government also presented sufficient evidence to convict Tidwell for violating the NAGPRA. Under the criminal component of the NAGPRA, 18 U.S.C. § 1170(b), the government had to prove that Tidwell: (1) knowingly, (2) sold, purchased, used for profit, or transported for sale or profit, (3) Native American cultural items obtained in violation of the NAGPRA. *See* 18 U.S.C. § 1170(b). The government produced expert witnesses who testified that the masks Tidwell purchased and sold belonged to the Hopi Indians and were "cultural patrimony." From Agent Fryar's testimony, the jury reasonably could deduce that Tidwell knew he was selling proscribed tribal artifacts. The government also introduced witnesses who testified that although they had sold the Acoma robes to Tidwell, they had told Tidwell that they were prohibited from selling them. A rational jury could have believed the government's witnesses; therefore, sufficient evidence existed to support the conviction under the NAGPRA.

Tidwell also challenges his convictions under 18 U.S.C. § 1163. Under § 1163, the government must show that Tidwell: (1) stole or knowingly converted for his use or the use of another, (2) any property belonging to any tribal organization. *See* 18 U.S.C. § 1163. The government's evidence that Tidwell knew that the Hopi owned the masks and were not permitted to sell them was sufficient to sustain the verdict.

Last, Tidwell challenges his conviction under 16 U.S.C. § 470ee for lack of sufficient evidence. To convict Tidwell for a violation of this statute, the government had to prove that Tidwell: (1) purchased or sold, (2) an archeological re-

source, (3) that was removed from Indian lands, (4) without a permit. *See* 16 U.S.C. § 470ee(b). The government's expert archeological testimony and evidence that the robes were owned by the Pueblo of Acoma were sufficient to permit a rational jury to conclude that Tidwell violated § 470ee(b) by purchasing and selling the robes.

## V

■ The district court did not err in enhancing Tidwell's sentence by six levels based on the amount of the loss. The value of loss is a factual issue. *See United States v. Lopez,* 64 F.3d 1425, 1427 (9th Cir.1995). Under the United States Sentencing Guidelines, a district court must first look to market value when determining the value of the loss of stolen goods. *See United States v. Choi,* 101 F.3d 92, 93 (9th Cir.1996), *cert. denied,* 520 U.S. 1120, 117 S.Ct. 1255, 137 L.Ed.2d 335 (1997). " 'Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue.' " *Id.* (quoting U.S.S.G. § 2B1.1 application note 2). In cases in which market value " 'is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.' " *Id.* In *United States v. Pemberton,* we affirmed a district court's valuation of stolen technical drawings based on their contract price because the drawings were unique and without a "broad and active market." *See* 904 F.2d 515, 517 (9th Cir. 1990).

In this case, the district court valued the masks at the prices Tidwell asked Fryar to pay for them. Because the items do not have a broad and active market, the district court's decision to use Tidwell's "asking price" was not clearly erroneous.

■ Tidwell also challenges the district court's finding that Tidwell obstructed justice. We review a district court's determination of obstruction of justice for clear error, but review *de novo* whether a defendant's conduct constitutes an obstruc-

tion of justice. *See United States v. Morales,* 977 F.2d 1330, 1330–31 (9th Cir.1992). Findings of fact related to a defendant's attempt to obstruct justice must be supported by a preponderance of the evidence, *see United States v. Garcia,* 135 F.3d 667, 670 (9th Cir.1998), but a sentencing judge may consider hearsay testimony or other evidence that would not otherwise be admissible at trial, *see United States v. Sustaita,* 1 F.3d 950, 952 (9th Cir.1993).

■ The district court did not err in determining that Tidwell obstructed justice. The court found by a preponderance of the evidence that Tidwell willfully created affidavits with the expectation that they would mislead the court. Further, there was evidence, although controverted, that Tidwell attempted to improperly influence a witness by offering cash and that Tidwell intimidated a witness. Therefore, the district court could have determined that a preponderance of the evidence supported the adjustment. *See* U.S.S.G. § 3C1.1 & application note 4.

## VI

In sum, we reject Tidwell's vagueness challenge to the NAGPRA and affirm his convictions as supported by sufficient evidence. Any error the district court made in excluding testimony was harmless. The district court did not err in its sentencing adjustments.

AFFIRMED.