UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSHUA JOEL ZAMORA GONZALES, | No. 13-56498 |
| Petitioner-Appellant, | D.C. No. 5:12-cv-00862-BRO-PLA Central District of California, Riverside |
| v. | |
| CONNIE GIPSON, Warden, | |
| Respondent-Appellee. | ORDER |

Before: PREGERSON, D.W. NELSON, and CALLAHAN, Circuit Judges.

Appellant's petition for rehearing is **GRANTED** and the petition for rehearing en banc is denied as moot. Judge Callahan votes to deny the petition for rehearing and the petition for rehearing en banc.

The memorandum disposition and dissent filed August 11, 2016, is withdrawn. A memorandum disposition shall be filed concurrently with this order. With the filing of the new memorandum disposition, the parties shall be allowed to file petitions for rehearing and/or rehearing en banc.

SO ORDERED.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSHUA JOEL ZAMORA GONZALES, | No. 13-56498 |
| Petitioner - Appellant, | D.C. No. 5:12-CV-00862-BRO-PLA |
| v. | |
| CONNIE GIPSON, Warden, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Argued and Submitted December 7, 2015
Pasadena, California

Before: PREGERSON, D.W. NELSON, and CALLAHAN, Circuit Judges.

Joshua Joel Zamora Gonzales ("Gonzales") appeals the district court's

denial of his federal habeas petition, challenging his conviction for three counts of

attempted murder and one count of shooting from a motor vehicle on insufficiency

of the evidence grounds. With respect to each of these counts, the jury found true

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

that Gonzales "personally and intentionally discharged a firearm, a handgun, which caused great bodily injury to" the victims. The jury also found that he committed the crimes within the meaning of California's gang enhancement statute. The trial court sentenced Gonzales, who was just 17 years old when the crimes were committed, to an aggregate term of 86 years and 8 months to life in state prison.

We have jurisdiction pursuant to 28 U.S.C. § 2253. We review the district court's decision to grant or deny the habeas petition de novo, *Solis v. Garcia*, 219 F.3d 922, 926 (9th Cir. 2000) (per curiam), and the last-reasoned state court's adjudication of the habeas claim for whether it was contrary to or an unreasonable application of clear Supreme Court precedent, *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). We reverse the district court and grant Gonzales's petition for habeas relief.

"To prevail on an insufficiency of evidence claim, a habeas petitioner must show that 'upon the record evidence adduced at the trial[,] no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (alteration in original)). Because the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to this petition, "we owe a 'double dose of deference'" to the state court's judgment. *Long v. Johnson*, 736 F.3d 891, 896 (9th

2

Cir. 2013) (quoting *Boyer*, 659 F.3d at 964). To grant habeas relief, we therefore must also conclude that "the state court's determination that a rational jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable." *Boyer*, 659 F.3d at 965. While this is an "extremely high bar" to overcome, the bar "is not insurmountable." *O'Laughlin v. O'Brien*, 568 F.3d 287, 304 (1st Cir. 2009). Indeed, we have an "obligation under *Jackson* to identify those rare occasions in which 'a properly instructed jury may . . . convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt[.]'" *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (quoting *Jackson*, 443 U.S. at 317 (alterations in original)).

"Although our sufficiency of the evidence review is grounded in the Fourteenth Amendment, we undertake the inquiry with reference to the elements of the criminal offense as set forth by state law." *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005) (citing *Jackson*, 443 U.S. at 324 n.16). Here, the attempted murder convictions required proof that Gonzales: (1) had the specific intent to kill; and (2) committed a direct but ineffectual act toward accomplishing this goal. *People v. Millbrook*, 166 Cal. Rptr. 3d 217, 229 (Cal. Ct. App. 2014); *see also* Cal. Penal Code §§ 187, 664. The shooting from a motor vehicle conviction required

proof that Gonzales: (1) willfully and maliciously discharged a firearm from a motor vehicle (2) at another person other than an occupant of a motor vehicle. Cal. Penal Code § 26100(c).

The evidence against Gonzales consisted of the following: Gonzales wore a baseball cap to a party, where he introduced himself as "Knuckles" and associated with members of the Playboyz gang. After the party ended, shots were fired from a dark colored vehicle that was leaving the area. Three victims were wounded. Witnesses recalled seeing two shooters, one shooting from the backseat of the dark colored vehicle and the other over the hood. No witness could identify the shooters, but at least one believed the shooter in the backseat wore a baseball cap. Gonzales admitted to hearing men on the street "talking shit" and to hearing shots as he was leaving the party in the backseat of his friend's light red Cadillac, but witnesses testified that many cars were leaving the area at the time of the shooting. Although the record does not reflect what prompted police to investigate Gonzales as a suspect, police arrived at Gonzales's house the following day and arrested him. They found no weapons in his home or on his person. After a prolonged interrogation at the police station, where Gonzales likely contacted numerous contaminated surfaces, a gunshot residue test revealed only two gunshot residue particles on Gonzales's right hand.

4

Considering "the record evidence adduced at the trial," *Jackson*, 443 U.S. at 324, we conclude that that evidence is constitutionally insufficient to support Gonzales's convictions.

First, no eyewitness testified that Gonzales was the shooter or could identify any of the occupants of the vehicle from which the shots were fired. One witness explicitly stated that Gonzales was not the person who "gave the heads up or what's up" to the victims and that he was *not* the shooter. Two others specifically testified that they did not see Gonzales in the car from which the shots were fired, let alone see him with a gun.

Second, testimony concerning Gonzales's baseball cap and gang affiliation does not distinguish him from other people present on the night of the shooting. Various witnesses testified that many people (one witness thought it was 100) attended the party. No witness testified that the shooter wore a baseball cap that matched the one Gonzales wore that night. The evidence did not establish that a person known as "Knuckles" was connected with the shooting, nor that the victims were shot to benefit the Playboyz gang specifically. Evidence of gang affiliation alone cannot constitute sufficient grounds for conviction. *See United States v. Garcia*, 151 F.3d 1243, 1244 (9th Cir. 1998).

5

Third, witnesses' descriptions of the car from which the shots were fired did not match descriptions of the car in which Gonzales claimed he was a passenger. All witnesses stated that the vehicle from which the shots were fired was black or dark colored, but Gonzales consistently stated that he left the party in his friend's light red Cadillac. He also repeatedly denied ever shooting a gun or seeing anyone fire a gun from the car he was in.

Fourth, although Gonzales stated during his police station interview that he was the rear passenger in a car that drove by some men on the street who were "talking shit" and that he later heard gunshots, he did not clearly admit that he exchanged words with or motioned to anyone from the backseat of his friend's light red Cadillac. At one point during the interview, Gonzalez explicitly denied saying anything to the men on the street. Further, witnesses testified that numerous cars passed by the victims before the shooting occurred.

Fifth, the two particles of gunshot residue on Gonzales's right hand do not connect him to any gun fired on the night of the shooting. The police never located a gun matching the shell casings found at the scene of the shooting. Further, the lead detective used a gunshot residue test kit to collect the particles of gunshot residue from Gonzales 12 hours after the shooting – after police allowed Gonzales to go to the bathroom and wash his hands when he arrived at the police station.

6

The prosecution's expert (who was not the one who administered the gunshot residue test) expressed surprise that the particles survived, testifying that he "would expect the 12 hours . . . to remove all of [the particles] and washing at that point to kind of finish the job." The expert also testified that it was just as likely the particles came from contacting a surface contaminated with gunshot residue as from firing a firearm, handling a firearm, or being in close proximity to a discharged firearm.

Sixth, despite a thorough search, police officers found no weapons, bullets, gun magazines, gun cleaning devices, or other firearm paraphernalia at Gonzales's home.

"In conducting our inquiry, we are mindful of the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review." *Juan H.*, 408 F.3d at 1275 (citations and internal quotation marks omitted). However, "[o]ur deference . . . is not without limit." *Id.* "We have held, for example, that evidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case[.]" *Nevils*, 598 F.3d at 1167; *see also O'Laughlin*, 568 F.3d at 301 ("A reviewing court should not give credence to evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." (citation and

7

alterations omitted)).  Where a defendant's conduct is consistent with both guilt and innocence, the government has the burden to "produce[] evidence that would allow a rational trier of fact to conclude beyond a reasonable doubt that the government's explanation of [the defendant's] actions, rather than [the defendant's] innocent explanation[,] . . . is the correct one." *United States v. Bautista-Avila*, 6 F.3d 1360, 1363 (9th Cir. 1993).

"Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.  However, mere suspicion or speculation cannot be the basis for creation of logical inferences." *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986) ( citations omitted); *see also Juan H.*, 408 F.3d at 1279 ("Speculation and conjecture cannot take the place of reasonable inferences and evidence . . . .").  Such is the case here.  Even resolving all conflicting factual inferences in favor of the prosecution, as we must do under *Jackson*, 443 U.S. at 326, the evidence does not permit any rational trier of fact to conclude that Gonzales was guilty beyond a reasonable doubt.

Gonzales's convictions rest on a speculative and weak chain of inferences that he was the shooter and that he personally discharged a firearm.  As the California Court of Appeal explained:

[W]itnesses testified that the rear passenger in a moving car shot at them. Furthermore, although the victims could not identify defendant as the shooter, another witness . . . identified defendant as the person who introduced himself to her as "Knuckles" at the . . . party and who was dressed like a Playboyz gang member and associating with other gang members. In conjunction with [this witness's] testimony are defendant's admissions to the police that he attended the party, dressed as she described him, and that he was in a car, passing by a group of men on the street at the time of the shooting. The foregoing evidence, combined with defendant's positive gunshot residue test, is sufficient to establish . . . defendant's identity as the shooter.

This evidence is not inconsistent with the possibility that Gonzales was the shooter. However, taken individually or collectively, these pieces of circumstantial evidence do not establish the inference that Gonzales was the shooter beyond a reasonable doubt. We hold that the California Court of Appeal unreasonably determined that a rational jury could have found sufficient evidence of guilt.

The evidence in this case is not merely "far from overwhelming," as the magistrate judge observed. Rather, it is constitutionally insufficient. Accordingly, viewing the evidence in the light most favorable to the prosecution as required by *Jackson*, and with deference to the state court decision as required by AEDPA, we hold that no rational trier of fact could have found proof of Gonzales's guilt beyond a reasonable doubt and that the California Court of Appeal's conclusion that the circumstantial evidence was sufficient to support Gonzales's convictions was objectively unreasonable.

9

We reverse the judgment of the district court and remand the case to the district court with instructions to grant the petition for a writ of habeas corpus.

**REVERSED** and **REMANDED.**

*Gonzales v. Gipson*, No. 13-56498

CALLAHAN, J., dissenting.

In finding the evidence constitutionally inadequate to sustain Joshua

Gonzales's convictions for attempted murder and shooting from a motor vehicle,

the majority improperly substitutes its view of the evidence for that of the

California Court of Appeal.  In doing so, the majority commits the exact error for

which the Supreme Court has repeatedly chastised us.  *See Davis v. Ayala*, 135 S.

Ct. 2187, 2202 (2015) (reminding us that "[t]he role of a federal habeas court is to

guard against extreme malfunctions in the state criminal justice systems, not to

apply *de novo* review of factual findings and to substitute its own opinions . . . .")

(citation and quotation omitted)).  I therefore respectfully dissent.

In refusing to defer to the Court of Appeal, the majority pays only lip service

to the "double dose of deference" required under the AEDPA standard of review.

Under AEDPA, a sufficiency of the evidence claim "face[s] a high bar in federal

habeas proceedings because [it is] subject to two layers of judicial deference."

*Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2062 (2012) (per curiam).

"First, on direct appeal, 'it is the responsibility of the jury—not the court—to

decide what conclusions should be drawn from evidence admitted at trial.  A

reviewing court may set aside the jury's verdict on the ground of insufficient

evidence only if no rational trier of fact could have agreed with the jury.'"  *Id.*

1

(quoting *Cavazos v. Smith*, 565 U.S. 1, 132 S. Ct. 2, 4 (2011) (per curiam)). This inquiry requires "viewing the evidence in the light most favorable to the prosecution . . . ." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.'" *Coleman*, 132 S. Ct. at 2062 (quoting *Cavazos*, 565 U.S. at 4).

The evidence of Gonzales's guilt is more than sufficient to support the jury's conclusion that Gonzales was guilty of attempted murder and shooting from a vehicle. The jury heard evidence that:

• Gonzales and two other individuals were in a car in the area at the time of the shooting.

• Gonzales was seated in the backseat of the car in which he was a passenger.

• Gonzales told the police that he saw some men on the street "talking shit" and "mad[-dogging] some other fool" when a car backed up toward them.

• Gonzales exchanged some words with the men on the street, who began to approach the car he was in.

• Gonzales claimed that he heard shooting as the car he occupied drove away, but denied that any shots were fired from his car.

• One person shot from the back seat of the car in question, and a front passenger got out of the car and fired a handgun from over the hood.

2

• Two different caliber shell casings were found at the scene.

• Prior to the shooting, a person in the vehicle asked the victims for their gang affiliation.

• On the night in question, Gonzales as wearing a baseball cap featuring the Pirates "P" logo in support of the Playboyz gang.

• A person in the backseat of the car from which shots were fired was wearing a baseball cap.

• At the party, there was a dispute that may have been gang-related, and Gonzales was "mingled" in with its participants.

• Gonzales tested positive for gunshot residue during his interview with police the next day.

• In his interview with the police, Gonzales continually denied participation in the shooting, while at the same time expressing his fear of retaliation.

There may be alternative explanations for what happened the night of the shootings and for the presence of gunshot residue on Gonzales's hands. But, faced with these facts, it can hardly be said that "no rational trial of fact could have found proof of guilt beyond a reasonable doubt." *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324). Indeed, the California Court of Appeal stated:

> [I]t is undisputed that someone committed a crime by firing a gun from a car at the three wounded victims. The witnesses testified that the rear passenger in a moving car shot at them. Furthermore, although the victims could not identify defendant as the shooter, another witness, Yesenia, identified defendant as the person who introduced himself to her as "Knuckles" at the Colton party and who was dressed like a Playboyz gang member and associating with other gang members. In conjunction with Yesenia's testimony are defendant's admissions to the police that he attended the party, dressed as she described him, and that he was in a car, passing by a

3

group of men on the street at the time of the shooting. The foregoing evidence, combined with defendant's positive gunshot residue test, is sufficient to establish the corpus delicti of defendant's four crimes and defendant's identity as the shooter. Similarly, substantial evidence supports the jury's finding that defendant was an occupant of the car from which the shots were fired. Sufficient evidence supports defendant's three convictions for attempted murder and one conviction for shooting from a motor vehicle.

This determination is not "objectively unreasonable."[1] *Boyer v. Belleque*, 659 F.3d 957, 965 (9th Cir. 2011). Rather than come to grips with what the prosecution's evidence against Gonzales *was* and the Court of Appeal's reasons for finding it constitutionally sufficient, the majority, engaging in a de novo review, finds fault in what the evidence against Gonzales *was not*. *See* Mem Dispo at 5–7. For example, the majority looks to the testimony of the gunshot residue expert to dismiss the significance of the presence of two particles of gunshot residue on Gonzales's hands. This view of the evidence directly conflicts with the repeated direction that our task is not to determine "whether the evidence excludes every hypothesis except that of guilt . . . ." *United States v. Nevils*, 598 F.3d 1158, 1165 (9th Cir. 2010). Viewed in the light most favorable to the prosecution, the

---

[1] To the contrary, not only did twelve jurors find Gonzales guilty beyond a reasonable doubt based on these facts, five judges—three Justices of the California Court of Appeal, the Magistrate Judge, and the District Judge—have all agreed that this evidence was sufficient to permit a "rational trial of fact [to find] proof of guilt beyond a reasonable doubt." *Briceno*, 555 F.3d at 1078.

4

presence of gunshot residue on Gonzales's hands the morning following the

shooting is strong evidence of his guilt.

The majority further errs in faulting the evidence supporting Gonzales's

conviction as resting on a "speculative and weak chain of inferences." *See* Mem

Dispo at 7–8. This conclusion requires turning a blind eye to the direct evidence of

Gonzales's guilt, which includes not only Gonzales's own admission to the police

that he was at the scene of the shooting, but also eye-witness testimony about the

shooting and the shooter's appearance. [2] The majority further ignores that, even if

the evidence *was* only circumstantial, such evidence and the "inferences drawn

from it may be sufficient to sustain a conviction." *Ngo v. Giurbino*, 651 F.3d

1112, 1114 (9th Cir. 2011) (quoting *Walters v. Maass*, 45 F.3d 1355, 1358 (9th

Cir. 1995)). It is therefore the majority's decision, and not Gonzales's conviction,

that is grounded in "mere suspicion or speculation." *United States v. Lewis*, 787

F.2d 1318, 1323 (9th Cir. 1986). This is exactly what AEDPA prohibits.

Applying the AEDPA standard of review, as directed by the Supreme Court,

I would find that the Court of Appeal's determination that a rational trier of fact

could agree with the jury was objectively, and eminently, reasonable. *See*

---

[2] The majority's discussion of the inferences that may be drawn when the evidence of guilt is only circumstantial is therefore inapposite. *See* Mem Dispo at 8 (citing *United States v. Bautista-Avila*, 6 F.3d 1360, 1363 (9th Cir. 1993); *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986)).

5

*Coleman*, 132 S. Ct. at 2062. This conclusion is inescapable when the evidence presented at trial is viewed—as it must be—in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319. Both a magistrate judge and a district judge, applying the correct AEDPA standard of review, so found. In reversing the district court's decision, the majority allows Gonzales—a defendant found guilty of attempted murder beyond a reasonable doubt—to walk free.

I respectfully dissent from the majority's decision to reverse the district court and grant Gonzales's petition for a writ of habeas corpus.