NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TERRILL SMITH, | No. 23-15637 |
| Petitioner-Appellant, | D.C. No. 2:21-cv-01928-SPL |
| v. | |
| UNITED STATES OF AMERICA, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted May 15, 2025
Phoenix, Arizona

Before: RAWLINSON, BUMATAY, and SANCHEZ, Circuit Judges.
Dissent by Judge RAWLINSON.

Terrill Smith ("Smith") appeals the denial of his 28 U.S.C. § 2255 motion

for alleged ineffective assistance of counsel. We review a district court's denial of

a § 2255 motion de novo, and the decision whether to hold an evidentiary hearing

on such a motion for an abuse of discretion. *United States v. Rodriguez*, 49 F.4th

1205, 1211 (9th Cir. 2022). We affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1.  Smith's trial counsel did not provide prejudicial ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to consult with or present a sex-industry expert at trial.  To obtain relief for ineffective assistance of counsel, Smith must show that his attorney's performance fell below an objectively reasonable standard and that he suffered prejudice as a result.  *Rodriguez*, 49 F.4th at 1213; *see also United States v. Osorio-Arellanes*, 112 F.4th 647, 665 (9th Cir. 2024) ("[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

Relying on the declaration of Dr. Barbara Brents, Smith argues that a sex-industry expert would have made it clear to the jury that legal escort services are commonplace in Las Vegas.  However, our assessment of attorney performance is "highly deferential: [Smith] must surmount the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Rodriguez*, 49 F.4th at 1213 (internal quotation marks and citation omitted)). Smith's trial counsel elicited favorable concessions on cross-examination from the Government's experts.  Agent Michael Russo and Detective Christi DeCoufle both admitted that it was possible to work as an escort without being a prostitute. That a different attorney would have called an expert does not mean Smith's trial counsel was ineffective in failing to do the same.  *See Harrington v. Richter*, 562 U.S. 86,

111 (2011) ("*Strickland* does not . . . require[e] for every prosecution expert an equal and opposite expert from the defense. In many instances cross-examination will be sufficient to expose defects in an expert's presentation."); *Chong v. United States*, 112 F.4th 848, 861 (9th Cir. 2024) (per curiam) ("Counsel's performance must have done more than just 'deviated from best practices or most common custom.' It must have essentially 'amounted to incompetence under prevailing professional norms.'" (internal citation omitted)). Here, Smith's trial counsel strategically objected to the Government's evidence, effectively cross-examined the Government's witnesses, moved for a judgment of acquittal, highlighted the weaknesses in the Government's case, and argued in his opening and closing statements that Smith intended to help Vanessa get a legal job after arriving in Las Vegas. The record establishes that Smith's trial counsel provided "active and capable advocacy." *Harrington*, 562 U.S. at 111.

Smith overlooks the fact that a defense expert might have been forced to concede on cross-examination that certain sex acts discussed between the undercover officer posing as "Vanessa" and Smith were illegal. Vanessa asked Smith about the legal consequences of prostitution and whether she could use condoms to protect herself against sexually transmitted diseases. Smith answered all of Vanessa's questions, explaining that a lawyer and bail bondsman would help her if she got into trouble and that prostitution is a misdemeanor in Las Vegas.

3

Having a defense expert make damaging concessions on the witness stand could have undermined Smith's defense. *See Bonin v. Calderon*, 59 F.3d 815, 834 (9th Cir. 1995) (noting that expert testimony "would have opened the door to precisely the type of cross-examination that [defense counsel] sought to avoid").

Smith also contends that his trial counsel was ineffective for failing to challenge the reliability of the Government experts' opinions. A prior panel of this court rejected a similar challenge to Detective DeCoufle's testimony on direct appeal. *United States v. Smith*, No. 18-10289, 817 F. App'x 450, 451-52 (9th Cir. Aug. 17, 2020) ("Given Detective Decoufle's background and experience, Smith's assertion that Detective Decoufle's expertise was limited to prostitution in Arizona is unpersuasive."). Given that Agent Russo had far more experience in sex-trafficking investigations than Detective DeCoufle, we see no ineffective performance in counsel's failure to object.

Smith also fails to demonstrate prejudice. "The *Strickland* prejudice standard is 'highly demanding,'" and "the likelihood of a different result must be 'substantial, not just conceivable.'" *Osorio-Arellanes*, 112 F.4th at 666 (citations omitted). The Government's evidence against Smith was substantial, and included a phone call in which Smith and Vanessa discussed particular types of unlawful sex acts, whether clients would need to use a condom, and how much money to charge. The Government also presented numerous Facebook communications

4

between Smith and a known prostitute, Bunny Jordan, about Jordan's prostitution activities in Oklahoma.

2. Trial counsel's failure to object to FBI Agent Blake Childress's testimony about an unnamed individual's trafficking conviction did not constitute prejudicial ineffective assistance. Childress testified about a Facebook post by "Mitchell Moola" which invited women to reach out to the individuals tagged in the post if they wanted someone to help them build a career in prostitution. Childress stated that "one of the individuals that was tagged in that post was an individual that was previously charged and convicted here in the District of Arizona for trafficking. So him as well as, approximately 64, 65 other individuals."[1]

Defense counsel's decision not to object at that point was clearly strategic because counsel indicated he would address this testimony in his closing arguments. In closing, counsel stated that the Government could not prove that Smith knew anything about the Moola post nor could Smith do anything about being tagged in the post. Smith's trial counsel even offered a hypothetical about Agent Childress being tagged in a post about corrupt FBI agents to illustrate being tagged in a post did not mean it was true.

3. Smith's trial counsel was not ineffective for failing to object to alleged hearsay. Before Smith's conversation with Vanessa, one of Smith's Facebook

---

[1] The jury did not hear anything else about the convicted individual.

friends, Cee Chizzle, sent him a message referring to him as "P" and warning Smith about Vanessa. Smith asserts that his trial counsel was ineffective for failing to object to the message on hearsay grounds. But Smith has failed to establish that Chizzle's message was offered for its truth. Fed. R. Evid. 801(a). As a prior panel concluded, the message, including the "P" salutation, could have been introduced to show Smith's knowledge and intent. *Smith*, 817 F. App'x at 451. Smith has not demonstrated that a hearsay objection would have been sustained by the district court.

Nor has Smith shown any prejudice by the admission of this message. The jury saw multiple memes that Smith himself posted referring to pimps and prostitution. In view of the substantial evidence at trial against Smith, including his conversations with Bunny Jordan and Smith's own statements to Vanessa regarding which sex acts she could perform and the legal consequences if she were caught, there is no substantial likelihood that excluding evidence of the letter "P" in a message to Smith would have affected the outcome of trial.[2]

4. Finally, the district court did not abuse its discretion in declining to hold an evidentiary hearing. The court based its decision on a fully developed record from the pre-trial, trial, and post-trial proceedings. In doing so, the district court

---

[2] Because Smith fails to show any error in his trial counsel's performance, there is no cumulative error. *See Lopez v. Allen*, 47 F.4th 1040, 1053 (9th Cir. 2022).

6

did not contest any facts provided by Smith's declarants or question their credibility. An evidentiary hearing was thus unnecessary to assess the declarants' credibility or further develop their testimony. *See Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988).

**AFFIRMED.**



***Smith v. United States*, Case No. 23-15637**
**Rawlinson, Circuit Judge, dissenting:**

I respectfully dissent from the decision of my colleagues denying habeas

relief to the Petitioner, Terrill Smith (Smith). In my view, Smith was denied the

effective assistance of counsel in the following three instances:

**1.      Failure To Investigate A Sex Industry Expert**

At Smith's trial for sex trafficking, the government called two detectives

who testified that in their experience, escorting and prostitution are synonymous.

Although the detectives acknowledged on cross-examination that it is possible to

be an escort without being a prostitute, they both reiterated that in their years of

experience, prostitution and escorting were interchangeable.

Smith's defense counsel admitted that he never even thought of investigating

the existence of an expert to testify regarding the difference between escorting and

prostitution. This distinction was crucial because Smith's defense was that he was

recruiting the officer posing as the victim to be an escort, rather than a prostitute.

In addition, because the officer posing as the victim was the source of most of the

comments mentioning prostitution, the expert's testimony would corroborate

Smith's statements that the "victim" could make a living as an escort in Las Vegas,

without engaging in prostitution. Finally, and most importantly, the proffered

1

expert for the defense studied the sex industry in Las Vegas, the destination for the victim rather than in Arizona, where the prosecution's witnesses garnered their knowledge of sex workers.

"This court has repeatedly held that a lawyer who fails adequately to investigate and introduce evidence that . . . raises sufficient doubt . . . to undermine confidence in the verdict, renders deficient performance. . . ." *Duncan v. Ornoski*, 528 F.3d 1222, 1234 (9th Cir. 2008) (citations, alterations, and internal quotation marks omitted.) "We allow lawyers considerable discretion to make strategic decisions about what to investigate, but only *after* those *lawyers have gathered* sufficient evidence upon which to base their tactical choices. . . ." *Id.* at 1235 (citation and internal quotation marks omitted) (emphasis in the original). Here, it is undisputed that defense counsel never even considered obtaining expert testimony on the difference between an escort and a prostitute, or the "nature of escorting and related services in Las Vegas."

Indeed, a criminal defense attorney in Arizona who has "been involved in numerous sex cases, including sex trafficking cases," filed a declaration attesting that she "readily identified . . . Barbara Brents, from the University of Nevada at Las Vegas (UNLV)," who would be "able to refute the testimony of the Government's police officers."

2

The declaration of Dr. Barbara Brents, established that she is a professor in the Sociology Department at UNLV, with a Ph.D. and M.A. in Sociology. She teaches university level courses and supervises "Ph.D. research projects in the areas of sexuality, gender and the law." Dr. Brents has "conducted and supervised research on the sex industry in Nevada, the United States, and other nations for more than 25 years. Her research "has included interviews with sex workers and managers, surveys including more than 2,000 clients, and observations in a wide variety of venues." Her research projects "have been published in peer-reviewed academic journals, edited collections and in two co-authored books." Finally, Dr. Brents "regularly consult[s] with sex worker support organizations and policy makers on issues surrounding the sex industry."

Based on her extensive and prolonged study of the sex industry, Dr. Brents opined that:

> 1.     There are many individuals who work in formal and informal service working providing adult entertainment, leisure, and intimate services in person or in the online, freelance, 'gig' economy that do not exchange sex for money.
>
> 2.     There is an extremely wide range of informal, adult, entertainment, leisure, and intimate services that individuals who may be considered attractive may provide in tourist towns like Las Vegas that do not include sex.

3

Dr. Brents listed the following activities as examples of interactions for escorts as not involving sex acts:

1.      Interacting with and accompanying individuals while they gamble

2.      VIP services

3.      Dating

4.      Companionship

5.      Tickle parties

6.      House shows

7.      Dancing (nude or semi-clothed)

8.      Sensual massage without penetration or touching genitals

9.      "Sugaring"

10.     "Professional domination"

11.     Only Fans and similar webcam experiences

12.     "Ignore" interactions

13.     "[F]inancial domination"

This expert testimony would have bolstered Smith's defense that he was not soliciting the undercover officer to perform acts of prostitution. "Although it may not be necessary in every instance to consult with or present the testimony of an expert, when [as here] the prosecutor's expert witness testifies about pivotal

evidence or directly contradicts the defense theory, defense counsel's failure to present expert testimony on that matter may constitute deficient performance." *Duncan*, 528 F.3d at 1235. Dr. Brent's sterling academic and professional credentials would have given her testimony a gravitas that would have effectively encountered the testimony of the law enforcement witnesses. *See United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001) ("By and large the relationship between prostitutes and pimps is not the subject of common knowledge. . . .") (citations omitted).

The majority disposition relies on the reasoning that "a defense expert might have been forced to concede on cross-examination that certain sex acts discussed between [the officer posing as the victim] and Smith were illegal." *Majority Disposition*, p. 3. But the same was true for the prosecution's experts, who were "forced to concede" that it is possible that escorting may occur without engaging in prostitution. This situation proves the point that the jury should have been presented with expert testimony from both sides when considering the defense theory of the case. *See United States v. Julian*, 440 F.2d 779, 780 (9th Cir. 1971) (noting that the jury is to weigh competing expert testimony). In addition, defense counsel could have pointed out that most of the references to acts involving prostitution were initiated by the officer posing as the victim rather than by Smith.

5

Finally, the majority posits that Smith was not prejudiced by his counsel's failure to even consider calling an expert witness. *Majority Disposition*, p.5. A defendant is prejudiced by his counsel's ineffective performance when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Browning v. Baker*, 875 F.3d 444, 474-75 (9th Cir. 2017), *as amended* (citation and internal quotation marks omitted). Smith easily meets this standard because there is a "reasonable probability that . . . at least one juror would have harbored reasonable doubt about [Smith's] guilt" after hearing the testimony from Dr. Brents. *Id.* at 475 (citation and internal quotation marks omitted). We know this because even without the expert testimony from Dr. Brents, Smith was acquitted on one of the charges.

2. **Failure To Object To Testimony Linking Smith To A. Convicted Sex Trafficker**

At trial, one of the prosecution witnesses testified that one of the people "tagged" in a Facebook post with Smith was a convicted sex trafficker. Despite the district court specifically interjecting to ask defense counsel if he wanted to object to this evidence, counsel declined to object. Rather, he opted to address this testimony in closing argument.

Counsel's approach was ineffective for two reasons. The first is that any

6

trial counsel worth his salt knows that if a judge is soliciting an objection, that objection is likely to be sustained. The second is that the jury is instructed that argument of counsel is not evidence. Consequently, rather than objecting to the evidence in response to the court's invitation and likely having the testimony stricken, counsel left this damaging evidence essentially unrebutted by addressing it during oral argument, and not during the evidentiary phase of the trial.

In a case where the defendant is being accused of sex trafficking, testimony linking him to a convicted sex trafficker only serves to bolster the prosecution's case and prejudice the defendant. *See, e.g.,United States v. Garcia*, 151 F.3d 1243, 1246 (9th Cir. 1998) (discussing a conviction that was overtured due to reference to gangs).

### 3. Failure To Object To Testimony That Reference To Smith As "P" Referred To "Pimp"

As with the prior failure to object, this evidence labeled Smith as a sex trafficker in the eyes of the jury. There was no strategic reason for failing to object to this testimony labeling Smith as a pimp, especially in view of the prosecution's concession during closing argument that Smith never said he was a pimp, never said he wanted the "victim" to "sell [her] body in exchange for money," and never said he wanted the "victim" to "engage in a commercial sex act." As in *Correll v.*

*Ryan*, 539 F.3d 938, 949 (9th Cir. 2008), "[t]o the extent there was any strategy involved" in the decision not to object to this evidence, "it cannot be considered a reasonable strategy by any objective measure."

In summary, and importantly, the failure to call an expert alone would support reversing Smith's conviction. However, the cumulative effect of these three crucial derelictions leave no doubt that Smith was deprived of a fair trial due to his counsel's ineffectiveness. *See Harris By and Through Ramseyer v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1998) ("We have previously recognized that prejudice may result from the cumulative impact of multiple deficiencies. . . .") (citation and internal quotation marks omitted). I respectfully dissent.