Filed 11/17/23  P. v. Martinez CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SANTOS MARTINEZ,<br><br>    Defendant and Appellant. | B325280<br><br>(Los Angeles County Super. Ct. No. BA361997) |

APPEAL from an order of the Superior Court of Los Angeles County, Renee F. Korn, Judge.  Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Santos Martinez (defendant) appeals the order denying his petition for vacatur of his murder conviction and resentencing under Penal Code section 1172.6 (formerly section 1170.95)[1] entered after an evidentiary hearing held pursuant to subdivision (d) of that statute. Defendant contends substantial evidence did not support the trial court's finding that he directly aided and abetted the killing with intent to kill. We conclude substantial evidence does support the trial court's order and thus affirm.

## BACKGROUND

### The 2013 murder conviction

In 2013 defendant and his codefendant Francisco Gutierrez were convicted of first degree murder, with true findings that a principal personally used and intentionally discharged a firearm causing great bodily injury or death and that the crime was committed for the benefit of a criminal street gang. Defendant was sentenced to a term of 50 years to life in prison. On direct appeal we affirmed the judgment in *People v. Martinez* (Dec. 10, 2014, B253468) (nonpub. opn.).

### Trial evidence

On August 31, 2007, between 10:00 and 11:00 p.m., Angel Bautista, an associate of the Drifters gang, and Abdon Solis were waiting outside Best Buy Markets, when an SUV drove into the driveway and stopped, facing a nearby alley. Defendant emerged

---

[1] All further unattributed code sections are to the Penal Code, and we henceforth refer to former section 1170.95 solely by its renumbered section 1172.6.

2

from the driver's side,[2] approached and asked Bautista, "Where you from?"[3] When Bautista replied, "Drifters," defendant punched him. Bautista returned the blow, and the two men fought. Within about 30 seconds Bautista appeared to get the better of defendant, and Gutierrez got out of the passenger side of a nearby black or dark-colored SUV wearing black clothing and a ski mask, carrying a shotgun. Gutierrez approached and fired the shotgun three times, with the third and fatal shot directly to Bautista's head. Gutierrez got back into the SUV, which defendant drove quickly away.

The SUV was later found abandoned and crashed into a wall in the alley near the Best Buy Markets. DNA taken from blood and items left in the SUV was identified as belonging to defendant and Gutierrez and indicated defendant was in the driver's seat and Gutierrez in the backseat. A shotgun found in a garage about a quarter mile away from the market contained a spent 12-gauge Schonebeck shell. Two such shells were found near Bautista's body. Gutierrez's DNA was found on the shotgun.

The medical examiner who performed the autopsy opined that while lying on the ground, Bautista was struck by shotgun slugs twice from within three or four feet before the shotgun

---

[2]     As neither party challenges the trial court's finding that defendant was the man who approached and Gutierrez was the actual shooter, we refer to them without summarizing identification evidence in depth.

[3]     "Where you from" is the "ultimate challenge" in gang culture according to the testimony of gang expert Los Angeles Police Department Officer Shane Bua.

barrel touched or nearly touched Bautista's head and was fired a third time, removing half his head.

Defendant was located and arrested nearly two years later, charged with an unrelated crime and interviewed by Detective Gilbert Alonso, the investigating officer in this case. Defendant told the detective he knew the police were looking for him since the day after his car had been stolen by members of a different gang, who beat him and took the car. Defendant admitted he never reported the car theft or the beating.

In recorded conversations with cellmates defendant said he knew he was "fighting a murder case" and the police had obtained his DNA and his car after he crashed it and bled. Defendant explained it was the "same day that I did . . . that I pulled the job, fool, the cops were following me. So I crashed my car, fool, but I was able to get the fuck outta there, but I left blood in the car and they just caught me." Defendant acknowledged he was a member of the Playboys gang. Defendant said the police did not have the gun so he told detectives some guys took his car and beat him up, and maybe some blood was left in the car. In another conversation, defendant said he was "screwed," that the police had the car he had driven and his blood. He added the only thing the police did not have was the gun used in the murder.

Officer Bua testified as the prosecution's expert on gang culture with particular expertise regarding the Playboys and Drifters gangs,[4] describing the Playboys' territory, and its

---

[4] As the validity of the gang enhancement is not at issue in this appeal, we summarize only those portions of Officer Bua's testimony relevant to state of mind and of motive, as "evidence of

importance to gangs.  He explained that because other gangs were afraid to enter its territory, it elevated the home gang's status and prevented narcotics sales by anyone not affiliated with that gang.  On August 31, 2007, there were over 600 documented members of the Playboys gang and its cliques, and at least 200 of them were then considered active or semi-active.  Based on their many Playboys gang-themed tattoos and Officer Bua's acquaintance with both defendants, it was his opinion that at the time of the murder, defendant and Gutierrez were active members of the Playboy gang.

The Drifters gang was one of the Playboys gang's main rivals, and the two gangs had never gotten along.  Bautista's murder was committed in Drifters' territory.  Also at that time, Playboys' territory was vast compared to the Drifters' territory and the Playboys gang was dominating the Drifters.  At the time of the shooting the two gangs were in a struggle over control of schools in the area where students from both territories attended and where the gangs recruited members.  This resulted in fights designed to make students want to join the stronger gang and afraid to join the weaker gang.  Officer Bua estimated that there had been five attacks by Playboys on Drifters for every attack by Drifters on Playboys.

In Officer Bua's expert opinion, the Playboys gang's primary activities were narcotics sales, robberies, assaulting rivals, witnesses and others, extortion, tagging, assaults with a deadly weapon, murder, and coming together to intimidate the

---

motive is often probative of intent to kill." (*People v. Smith* (2005) 37 Cal.4th 733, 741.)

5

community.  Among weapons commonly used were handguns, shotguns, and rifles.

Officer Bua explained that generally in gang culture, committing crimes with other gang members to benefit the gang, such as tagging or physically assaulting an enemy in rival territory, may be called "going on a mission" and "putting in work."  Each gang member would be given a specific job on the mission, such as getaway driver, tagger, robber, or keeper of the firearm with the responsibility to protect others on the mission.  Anyone on the mission who failed to "step up" could suffer great consequences within the gang.  Gang members on missions in rival gang territory would go in groups for backup and camaraderie, and to be more intimidating to their victims.

Because gang members generally take weapons with them on missions in rival territories it would be unlikely for anyone in the car not to know when someone was armed.  Officer Bua added that he had been told by many different gang members it was a matter of respect to inform a fellow gang member of the presence in the car of a concealed firearm, a large amount of narcotics, or anything else that could create trouble with the police if stopped.  It would then be up to the individual to decide whether he wanted to be in the car.

The important concept of respect in gang culture was also explained.  Gang members equated fear with respect, and thus earned respect by committing crimes and by dominating and victimizing rival gangs.  Individual gang members earned the respect of their gang by committing crimes.  The more hardcore the crimes, the greater the respect for the gang and the individual member within the gang.  Losing a fight to a rival gang member would cause the loser's gang to appear weak,

6

resulting in the member's loss of respect and requiring retaliation by any means necessary in order gain back the gang's respect.

It was Officer Bua's opinion that the following hypothetical facts would describe an activity that would benefit a gang: "[T]wo or more gang members from Playboys went into territory for Drifters and one of the occupants of that car had a shotgun and a ski mask going into that rival territory, one of the occupants of the car got out and said to a young man on the sidewalk, 'Where are you from?' The young man responds, 'Drifters,' and a fistfight follows in which the Drifter gang member is winning the fistfight and another occupant of the car gets out with a shotgun and shoots and kills the Drifters gang member . . . ." Going on a mission to challenge a rival in his territory, particularly if armed with a visible weapon such as a shotgun and then killing the rival to prevent him from winning the fight, would demonstrate to the rival gang and the community that the Playboys gang was incredibly bold and to be feared. This enhanced reputation would benefit the gang by enabling its members to get away with committing more crimes. The shooter's status would also be elevated within the gang by showing his willingness to commit murder to protect his fellow gang member.

**Petition for resentencing**

Effective 2019, the Legislature enacted Senate Bill No. 1437, which eliminated murder liability under the natural and probable consequences doctrine and amended the requirements for murder liability in sections 188 and 189. (*People v. Gentile* (2020) 10 Cal.5th 830, 849; see Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature also provided a procedure for those convicted of murder to seek retroactive relief if they

7

could not be convicted under sections 188 and 189 as amended effective January 1, 2019.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957; see § 1172.6.)

In February 2020, defendant filed a petition for resentencing pursuant to section 1172.6.  On April 16, 2020, after reviewing the court's file, including our appellate opinion in *People v. Martinez, supra*, B253468, the trial court found defendant ineligible for relief and summarily denied the petition without having appointed counsel for defendant.  We reversed that order and remanded the matter to the superior court for the issuance of an order to show cause and further proceedings in accordance with subdivision (d) of section 1172.6.  (See *People v. Martinez* (Aug. 18, 2021, B306140) [nonpub. opn.].)

On remand, the trial court appointed counsel for defendant, ordered the prosecution to file a response to the petition, issued an order to show cause why relief under section 1172.6 should not be granted, and scheduled briefing.  Prior to the hearing the trial court read the transcripts of defendant's 2013 trial.  At the hearing the court heard the argument of counsel, who did not submit new or additional evidence.  The trial court denied the petition and issued a memorandum of decision on August 26, 2022.  The court found the evidence established beyond a reasonable doubt that defendant directly aided and abetted the murder by his codefendant, and the evidence established both express and implied malice beyond a reasonable doubt.

Defendant filed a timely notice of appeal from the order of denial.

## DISCUSSION

Defendant contends substantial evidence does not support the trial court's decision that defendant could be convicted under current law of either first or second degree murder.

At the hearing stage, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, . . . that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) As the trial court sits as an independent fact finder (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951), the court must "'review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard . . .'" (*People v. Oliver* (2023) 90 Cal.App.5th 466, 480, quoting *People v. Clements* (2022) 75 Cal.App.5th 276, 298). Either party may present new evidence. (§ 1172.6, subd. (d)(3).) If the evidence shows beyond a reasonable doubt that petitioner could still be convicted of murder under current law, the petitioner is not entitled to resentencing. (*People v. Guillory* (2022) 82 Cal.App.5th 326, 333.)

Under current law and with exceptions not relevant here, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) "For a defendant to be liable as a direct aider and abettor, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission. [Citation.] . . . [Citations.] 'An aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately,

and with premeditation, having formed his own culpable intent. Such an aider and abettor, then, acts with the mens rea required for first degree murder.'" (*In re Lopez* (2023) 14 Cal.5th 562, 579.)

Second degree implied malice murder remains a valid theory of murder liability (although it may not be based upon the natural and probable consequences theory). (*People v. Gentile, supra*, 10 Cal.5th at pp. 850-851.) "'Malice is implied when the killing is proximately caused by "'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'" [Citation.] In short, implied malice requires a defendant's awareness of engaging in conduct that endangers the life of another . . . .'" (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) "'Current law thus provides that the actual killer, or a direct aider and abettor of the killing who knew that his (or her) conduct endangered the life of another and acted with conscious disregard for life, may be guilty of second degree murder.'" (*People v. Glukhoy* (2022) 77 Cal.App.5th 576, 588, quoting *People v. Langi* (2022) 73 Cal.App.5th 972, 979.)

On appeal from the denial of a petition after hearing, we review the ruling for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) We do so by applying the usual substantial evidence standard of review. (See *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233-234.) We thus view the evidence in the light most favorable to the court's order to determine whether any reasonable trier of fact could have made the same determination beyond a reasonable doubt. (*People v. Reyes, supra*, at p. 988.) We "presume in support of the judgment the

10

existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "The same standard applies when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) "An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "The standard is deferential, but the evidence in support of the judgment must be *reasonable, credible, and of solid value*; 'a mere possibility' or '[s]peculation is not substantial evidence [citation]." (*People v. Brooks* (2017) 3 Cal.5th 1, 120.) Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conclusion of the trier of fact].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"[B]ecause 'we *must* begin with the presumption that the evidence . . . *was* sufficient,' it is defendant, as the appellant, who 'bears the burden of convincing us otherwise.'" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1430.) Here, defendant has failed to "[p]rovide a summary of the significant facts limited to matters in the record." (Cal. Rules of Court, rule 8.204(a)(2)(C).) The trial court based its decision on the evidence given at defendant's 2013 trial. The significant facts are found in the reporter's transcripts of that trial. However, defendant merely purports to incorporate by reference the summary of facts set forth in the appellate opinion in *People v. Martinez, supra*, B253468.[5]

---

[5]     Defendant also summarizes facts contained in the arguments of  counsel at the evidentiary hearing on the petition. "'[I]t is axiomatic that the unsworn statements of counsel are not evidence.'" (*People v. Wallace* (2004) 33 Cal.4th 738, 754, fn. 3.)

Although it is his burden to demonstrate the trial evidence was insufficient to support the court's decision, defendant's briefs fail to refer to that evidence, as required by rule 8.204(a)(1)(C) and (2)(C).

As defendant has not set forth in his opening brief all the material evidence in the light most favorable to the decision of the trier of fact, he cannot prevail on a sufficiency of the evidence argument. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.) "The focus of the substantial evidence test is on the whole record of evidence presented to the trier of fact, rather than on "'isolated bits of evidence.'"" (*People v. Cuevas* (1995) 12 Cal.4th 252, 261, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 577.)

Furthermore, a defendant "does not show the evidence is insufficient by citing only his own evidence, or by arguing about what evidence is not in the record, or by portraying the evidence that is in the record in the light most favorable to himself." (*People v. Sanghera, supra*, 139 Cal.App.4th at p. 1573.) This is precisely what defendant has done here.

In essence, defendant points out that it was Gutierrez who was in possession of the ski mask and gun, while there was no evidence showing defendant was armed, that defendant asked Gutierrez to shoot the victim or for help, that defendant and Gutierrez had previously discussed killing the victim, or that defendant and Gutierrez had a motive based upon some prior experience with the victim. Finally, defendant argues neither knowing that Gutierrez was armed nor defendant's gang membership alone can prove intent to kill.[6] From these facts and

---

[6] To illustrate the point that gang membership alone cannot prove intent to kill, defendant cites to the facts of several cases in which the evidence of malice was found insubstantial, but he does

argument, defendant draws inferences contrary to those supporting the court's decision and concludes the evidence was insufficient to prove defendant shared Gutierrez's intent to kill, necessary for liability as a direct aider and abettor.

Defendant has failed to meet his burden on appeal. We have read the transcripts of the trial evidence (summarized above), and the People have provided a thorough summary of that evidence, all of which amply supports the trial court's finding defendant harbored an intent to kill at the time he and Gutierrez drove into Drifters' gang territory with a shotgun in order to hunt down a Drifters gang member.

"Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) Direct evidence of intent to kill rarely exists, but often may be inferred from the circumstances of the crime and the defendant's act (*People v.*

---

so without showing those facts were comparable to the facts here, except gang members were involved and the defendant was with fellow gang members at the time of the shooting. (See, e.g., *People v. Reyes* (2023) 14 Cal.5th 981, 988 [defendant rode bicycle with fellow gang members close to rival gang territory without knowing one was armed]; *Juan H. v. Allen* (9th Cir. 2005) 408 F.3d 1262, 1266-1267, 1277 [minor defendant was near his brother when the brother shot the victim outside their home in a trailer park].) A comparison of the facts of different cases to demonstrate the insufficiency of evidence is not useful, as each case necessarily depends on its own facts. (*People v. Thomas* (1992) 2 Cal.4th 489, 516.) This is especially so when the issue is the defendant's state of mind. (See *People v. Mendoza* (2011) 52 Cal.4th 1056, 1075.)

*Sanchez* (2016) 63 Cal.4th 411, 457), and "evidence of motive is often probative of intent to kill" (*People v. Smith, supra,* 37 Cal.4th at p. 741).

Motive in gang shootings is reasonably inferred from hatred felt for rival gang members. (*People v. Sanchez* (2001) 26 Cal.4th 834, 849.) Here, Officer Bua testified that the Drifters gang was one of the Playboys gang's main rivals, that the two gangs had never gotten along, and at the time of the shooting the two gangs were in a struggle over control of recruitment in the local schools, which had resulted in fights, most of them instigated by Playboys gang members.

Defendant's apparently decisive and purposeful actions suggest he was searching for and intending to shoot a rival gang member. He drove his fellow gang member into rival territory probably knowing Gutierrez was armed with a shotgun, as a shotgun carried by his only passenger would be hard to miss and defendant does not claim the evidence was insufficient to show he knew the shotgun was in the car. Defendant approached Bautista immediately upon arrival at the market in Drifters gang territory and issued the ultimate gang challenge by asking, "Where you from?" When Bautista replied, "Drifters," defendant punched him, beginning the fight. Within just 30 seconds, Gutierrez emerged and shot Bautista three times with the shotgun.

Substantial evidence that defendant's intent to kill was premeditated may be demonstrated by categories of evidence suggested by the California Supreme Court in *People v. Anderson* (1968) 70 Cal.2d 15, 26-27, such as planning activity, preexisting motive, and manner of killing. (*People v. Mendoza, supra*, 52 Cal.4th at p. 1069.) There is no requirement that all three

14

factors be established or that any factor must be shown by direct evidence. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124-1125.)

Planning may be reasonably inferred from evidence the defendants armed themselves before the shooting. (See, e.g., *People v. Caro* (1988) 46 Cal.3d 1035, 1050; *People v. Villegas* (2001) 92 Cal.App.4th 1217, 1224.) The gang expert testified gang members are generally armed for missions in rival territory, which are inherently dangerous, and inform one another when there is a firearm in the car. In addition to motive, discussed above, the presence of the ski mask and the shotgun, along with defendant's jailhouse conversation about a "job" he did with a gun, also gave rise to a reasonable inference that the shooting was planned. Defendant also aided his accomplice by driving him into rival territory prior to the shooting and demanding a rival gang member identify himself and his gang. That defendant did so knowing that Gutierrez was armed strongly suggests they had planned the shooting.

In sum, substantial evidence demonstrates that with the motive to seek out and commit violence upon a Drifters gang member, defendant drove his accomplice into Drifters' territory with a shotgun and a disguise, issued a challenge to the victim, assaulted him when he identified his gang as Drifters, and then, just 30 seconds later, the accomplice emerged and shot the victim three times, delivering the third and fatal wound to the head before fleeing in defendant's car. These facts do not suggest a rash reaction to a random encounter with a rival gang member, and the timing does not reasonably support a conclusion that a more innocent encounter was planned but unexpectedly escalated once the two Playboys members began to execute the plan. Considering the facts in the context of all the trial evidence, we

15

conclude substantial evidence supports the finding that defendant directly aided and abetted the murder by his codefendant, and he did so with express or implied malice, such that any reasonable trier of facts would so find beyond a reasonable doubt.

As an alternative to outright vacatur of his murder conviction, defendant suggests that because the trial court made no express finding he premeditated and deliberated the murder, his conviction should be reduced to second degree murder. He concludes from the lack of an express finding of premeditation that the prosecution failed to prove first degree murder beyond a reasonable doubt.

"In the context of first degree murder, '"premeditated" means "considered beforehand . . .'." (*People v. Lee* (2011) 51 Cal.4th 620, 636.) The trial court implicitly found premeditation as demonstrated by its statement, "Applying the law to the facts in this case illustrates that Petitioner intended to kill when he and Codefendant drove into Drifters gang territory . . . . Petitioner and Codefendant took a shotgun and a ski mask and went to find a Drifters gang member." We have found substantial evidence to support the court's finding that defendant harbored a premeditated intent to kill prior to entering Drifters' gang territory and that he and Gutierrez planned their "job." ""[D]eliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action."'" (*Ibid.*) Providing transportation into rival gang territory to an armed accomplice with a disguise and then confirming the identity of a rival gang member for him moments before the accomplice shoots him, suggests a carefully considered plan.

Defendant cites no authority for his apparent underlying assertion, that the trial court's finding of implied malice somehow vitiates the finding of the elements of first degree murder beyond a reasonable doubt. Moreover, "[r]educing a first degree murder conviction to second degree murder is not an option under section 1172.6." (*People v. Gonzalez* (2023) 87 Cal.App.5th 869, 881.)[7]

We conclude that the trial court did not err in denying the petition.

## DISPOSITION

The August 26, 2022 order denying defendant's petition is affirmed.

_____
CHAVEZ, J.

We concur:


_____
ASHMANN-GERST, Acting P. J.


_____
HOFFSTADT, J.

---

[7] As we reject defendant's contentions regarding second degree murder, we need not reach the People's forfeiture argument.